IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAY D. WALKER,                                                    Case No. 6:16-cv-00311-JR

                Plaintiff,                                OPINION AND ORDER

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

                Defendant.

RUSSO, Magistrate Judge:

        Plaintiff Jay Walker brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title XVI Social Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

On February 27, 2012, plaintiff applied for DIB and SSI, alleging disability as of April 1, 2011. Tr. 193-202. His applications were denied initially and upon reconsideration. Tr. 129-36, 139-43. On September 18, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 44-70. On November 14, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19-32. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

**STATEMENT OF FACTS**

Born on August 31, 1966, plaintiff was 44 years old on the alleged onset date and 48 years old at the time of the hearing. Tr. 50, 193. He graduated from high school and worked previously as a commercial painter. Tr. 65-66, 215. Plaintiff alleges disability due to diabetes, heart disease, high blood pressure, and hand pain. Tr. 50-52, 214.

**STANDARD OF REVIEW**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not

disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ determined the following impairments were medically determinable and severe: "coronary artery disease with a history of myocardial infarction; hypertension; obesity; right shoulder capsulitis; and mild carpal tunnel syndrome." Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, except that:

> [he] is further limited to no more than occasional climbing of ropes, ladders and scaffolds. He is limited to no more than frequent reaching on the right, as well as frequent bilateral handling, grasping, fingering and feeling. [He] would also need to avoid concentrated exposure to fumes, dust, gases, poor ventilation, and other noxious odors.

Tr. 25.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 30. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant

Page 4 - OPINION AND ORDER

number of jobs in the national and local economy that plaintiff could perform despite his impairments, such as bench worker, inspector of hand packaging, and quality control checker of small product assembly. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom statements; (2) rejecting depression-related chart notes from Mary Allison, M.D., and Sudeshna Banerjee, M.D.; (3) failing to order a psychological evaluation; and (4) neglecting to account for all of his limitations in the RFC and at step five.

## I.      Plaintiff's Testimony

Plaintiff asserts the ALJ wrongfully discredited his subjective symptom testimony concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial

evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the September 2014 hearing, plaintiff testified that, beginning in April 2011, his breathing problems and diabetes, which also caused depression, rendered him unable to work. Tr. 50-51. Specifically, plaintiff "would shut down for days at a time [and] couldn't do nothing." Tr. 51. Plaintiff also endorsed generalized pain in his hands, legs, and feet, as well as intermittent heart pains following his January 2012 heart attack. Tr. 50, 52. As a result of these impairments, plaintiff stated that he cannot "walk that far" or use his hands, even to open a can with a can opener, because they are "crippled." Tr. 52, 57, 59. Plaintiff indicated that he had quit smoking cigarettes "[a]bout a month ago" and quit using methamphetamine "[a]bout a year ago." Tr. 53. In addition, plaintiff remarked that, after a long bout of non-compliance, he was currently taking his prescription medications for hypertension and diabetes, which he described as "pretty good" in terms of effectiveness. Tr. 52-54. Regarding mental health treatment, plaintiff testified that his "doctor gave [him] some depression medication once and [he] took it for a while but . . . quit taking it" because it "made [him] feel bad." Tr. 61. Plaintiff did not thereafter "talk to the doctor about trying a different [anti-depressant] medication" and he could not identify any reason why he had not sought psychological counseling. Id. When asked to describe his activities, plaintiff reported preparing meals a couple times per day, performing light cleaning, watching television, and leaving the house to go to the grocery store or medical appointments two- to three-times per week. Tr. 55-56.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms,

but his statements regarding the extent of these symptoms were not fully credible due to his medical non-compliance and activities of daily living, as well as the lack of corroborating medical evidence.[1] Tr. 25-30.

Notably, the ALJ found that plaintiff's "credibility regarding the severity of his impairments is diminished by a lack of compliance with prescribed medications and adhering to prescribed treatment for most of the period." Tr. 26. An ALJ may rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in affording less weight to a claimant's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotations omitted). As the ALJ noted, "[t]here are numerous reports throughout the record that [plaintiff] was not taking his medications and did not attend medical appointments." Tr. 26; see also Tr. 332-33, 335, 365, 406-08, 414, 419-20, 423-24, 437, 470, 485, 522, 526-27 (plaintiff's providers noting his failure to attend follow-up appointments and/or non-compliance with prescribed medications). For instance, plaintiff was discharged from a cardiac rehabilitation program following his heart attack because he "did not show for subsequent appointments." Tr. 335. Despite alleging that his lower extremities are painful to the point of being "crippled," plaintiff did not seek any treatment for his hands or wrists outside of obtaining an initial assessment in November 2011. Tr. 451, 572-74. Several providers counseled plaintiff, on numerous occasions, about lifestyle changes (e.g., smoking cessation, increasing activity levels, etc.) that he neglected to implement. See, e.g., Tr. 332-33, 343-44, 365, 406-08, 414, 419-20, 423-24, 430, 470, 509.

---

[1] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-39, available at 2016 WL 1119029 (superseding SSR 96-7p). Although the ALJ's decision was issued more than one year before SSR 16-3p became effective, it is nonetheless compatible therewith.

Moreover, while plaintiff testified that he cannot work due to depression, he did not seek any mental health treatment outside of procuring an anti-depressant in December 2012, which he subsequently stopped taking.[2] Indeed, plaintiff concedes that he "has not obtained counseling or tried any other medications" to address his allegedly disabling mental impairment. Pl.'s Opening Br. 13. Plaintiff nonetheless asserts that "[t]here is evidence in this case that depression itself has interfered with [his] ability to obtain treatment for his various conditions." Id. Aside from the fact that plaintiff does not follow this contention with any citation, the record before the Court evinces plaintiff obtained care, even for his mental impairment, when he wanted or believed he needed it. See Tr. 353 (plaintiff seeking medical treatment in November 2012 after his shopping cart was hit by a car in a parking lot), 365 (plaintiff seeking medical treatment in January 2013 for an abscess caused by injecting methamphetamine), 432 (plaintiff seeking medical treatment in October 2011 after stepping on a nail), 438-40 (plaintiff seeking medical treatment in December 2012 for depression). Significantly, plaintiff's own testimony at the hearing did not suggest that his depression imposed any barrier to seeking treatment. See Tr. 56, 61 (plaintiff acknowledging that he left the house multiple times per week to attend medical appointments and did not seek mental health treatment after December 2012, including for medication management, because he did not perceive it as desirable or necessary).

Further, as discussed in Section II, the providers who observed plaintiff to be depressed – i.e., Drs. Allison and Banerjee – were neither mental health specialists nor aware of plaintiff's drug use. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (examining psychologist's "conclusions regarding depression . . . were unreliable because of [the claimant's]

---

[2] Although plaintiff testified that he "didn't like the feel of" this anti-depressant medication, he did not contemporaneously disclose any side-effects to his providers. Tr. 61.

contemporaneous substance abuse"). To the extent they exist within the record, plaintiff's psychological findings (which both pre- and post-date Dr. Allison's treatment of plaintiff) were all normal. See, e.g., Tr. 279, 338, 406, 476, 484, 486, 551. Finally, as defendant observes, plaintiff's medical non-compliance was both "global" and "noted before he was diagnosed with depression in December 2012." Def.'s Resp. Br. 8 (citing Tr. 332-33, 341, 438, 443, 483, 485-86).

Accordingly, plaintiff's contention regarding depression is not born out by the record. See Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2014) (affirming the ALJ's credibility finding where "there was no medical evidence that [the claimant's] resistance [to treatment] was attributable to her mental impairment rather than her own personal preference"). Given these circumstances, the Court finds that the ALJ reasonably concluded plaintiff's failure to seek treatment and follow his doctor's recommendations undermined his subjective symptom testimony concerning the extent of his impairments.

The ALJ also found that plaintiff's testimony was contradicted by the medical record, which revealed that his physical impairments were not as significant as alleged. Tr. 27-28. Central to this determination was the fact that plaintiff's examination findings were largely unremarkable and his treatment consisted almost exclusively of various medication regimes, which provided periods of good control when properly implemented. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (citations and internal quotations omitted); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) ("whether the alleged symptoms are consistent with the medical

evidence" is a relevant consideration in evaluating the claimant's credibility) (citations omitted). The ALJ is correct; outside of prescription medications and joint injections in his shoulder, plaintiff declined other modalities of treatment. See, e.g., Tr. 406, 495, 497, 505-13. When he was compliant with his doctor's orders, he reported an amelioration of symptoms. See Tr. 53-54 (plaintiff testifying at the hearing that his hypertension and diabetes medications were effective), 337 (plaintiff reporting in February 2012 that he "is compliant with his medications" and "[d]enies any limitations"); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling").

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

## II.    Step Two Finding

Plaintiff contends the ALJ erred by failing to include depression as a severe impairment.[3] At step two, the ALJ determines whether the claimant has an impairment, or combination of

---

[3] Plaintiff does not characterize this argument as a step two challenge, asserting instead that "[t]he ALJ erred in failing to credit the opinions of [his] treating doctors regarding his depression." Pl.'s Opening Br. 11-12. Yet, as discussed herein, Drs. Allison and Banerjee did not formally evaluate plaintiff for depression, in part due to the fact that neither doctor is a mental health specialist. Tr. 342-45, 418-30, 522-31. In other words, Dr. Allison's and Dr. Banerjee's observations of plaintiff's emotional state do not qualify as opinion evidence within the purview of the Act. See 20 C.F.R. §§ 404.1527(a)(2),416.927(a)(2) ("[m]edical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). Even assuming the chart notes of Drs.

impairments, that is both medically determinable and severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921; Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence; "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citation omitted).

The record contains few references to plaintiff's mental impairment. On December 5, 2012, nearly two years after the alleged onset date, plaintiff first complained of depression due to his living situation and a conflict with his mother. Tr. 439-40. Although no formal mental health evaluation was undertaken at that time, plaintiff was prescribed an anti-depressant and instructed to return in one week. Id. On December 12, 2012, plaintiff reported "feel[ing] much better," in part because he had "talked [to] his mother." Tr. 438. The clinician independently observed that plaintiff had a "[b]righter affect [and was] smiling." Id. As specified in Section I, plaintiff

---

Allison and Banerjee qualify as opinion evidence, it is well-established that an ALJ may disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ need not credit a medical opinion that includes "no specific assessment of [the claimant's] functional capacity"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition).

thereafter stopped taking his anti-depressant and did not seek any further psychological treatment.

On December 17, 2012, plaintiff presented to Dr. Allison, an endocrinologist, who admonished plaintiff for "miss[ing] multiple follow-up visits," and for having stopped most of his medications and checking his blood sugars at home. Tr. 423-24. Plaintiff responded by explaining that he had recently gone "through a long bout of depression." Tr. 423.

On January 1, 2013, plaintiff was admitted to the hospital due to complications caused by his "chronic" and "concurrent use of methamphetamine." Tr. 365-85.

On January 11, 2013, plaintiff was again admitted to the hospital due to shortness of breath. Tr. 405. Upon his discharge the following day, Dr. Banerjee, a cardiologist, noted plaintiff's significant medical non-compliance and "[q]uestionable depression." Tr. 408.

On January 17, 2013, plaintiff followed-up with Dr. Allison. Tr. 419. While plaintiff had restarted his medications and ceased smoking, he was not monitoring his blood sugars and had "not made any significant changes to his diet or his exercise." Tr. 419-20. Dr. Allison observed that plaintiff had "multiple problems including significant depression, which is affecting his compliance with his medications and overall health"; however, she did not formally evaluate plaintiff for depression, record any clinical signs or symptoms, or refer plaintiff to mental health treatment. Tr. 419-21. The doctor also failed to acknowledge or otherwise account for plaintiff's significant drug use. Id.

There are no other chart notes in the record from Dr. Allison and plaintiff thereafter did not seek treatment from Dr. Banerjee for more than one year. In March 2014, plaintiff reinitiated care with Dr. Banerjee but did not express any feelings of depression, despite only "tak[ing] his

medications 'on-and-off.'" Tr. 527-29. At his next appointment with Dr. Banerjee in July 2014, plaintiff explained that "his mom fell and broke her hip and he has been attending to her in the hospital and rehabilitation center," which made him "very depressed." Tr. 522. In the clinical impression section, Dr. Banerjee remarked that plaintiff "appear[ed] quite depressed," but, like Dr. Allison, he did not perform a diagnostic assessment or otherwise note any clinical signs. Tr. 522-24.

At step two, the ALJ resolved that plaintiff's depressive disorder was medically determinable but not severe. Tr. 23-24. In making this finding, the ALJ accurately summarized the aforementioned evidence, expressly denoting that Dr. Allison "made no objective mental status findings consistent with depression and simply described [plaintiff] as 'very pleasant,'" and "did not know about his substance abuse." Tr. 23. The ALJ also considered the report of state agency consulting source Bill Hennings, Ph.D. Tr. 23-24. Dr. Hennings reviewed the record in April 2013 and discussed Dr. Allison's chart notes, including that she did "not list any signs or symptoms" of depression and was unaware of plaintiff's methamphetamine use. Tr. 121-23. As the ALJ acknowledged at step two, Dr. Hennings opined that plaintiff was no more than mildly limited in his activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation. Tr. 24, 123.

Initially, "[a]ny alleged error at step two was harmless because step two was decided in [plaintiff's] favor with regard to other ailments." Mondragon v. Astrue, 364 Fed. Appx. 346, 348 (9th Cir. 2010); Tr. 21. Regardless, in formulating plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and cited to the pertinent regulations. Tr. 25.

This analysis entailed evaluation of the relevant and probative medical evidence, as well as testimony from plaintiff and his mother. Tr. 26-30.

As addressed in Section I, the ALJ properly found plaintiff's subjective symptom statements to be not fully credible. Underlying this finding is the ALJ's implicit determination that plaintiff's broad medical non-compliance was related to personal preference – including the choice to use methamphetamine – as opposed to any latent psychological impairment. See, e.g., Tr. 22-23, 29-30. Concerning the medical evidence, the ALJ afforded "significant weight" to Dr. Hennings' opinion that plaintiff "had only mild limitations in functioning and no severe mental impairment" because "it was based on a review of all of [plaintiff's] medical records available at the time for a comprehensive opinion of functioning" and "consistent with the overall evidence." Tr. 29. Although the ALJ did not explicitly discuss Dr. Banerjee's July 2014 observation of depression, he did note that "[e]vidence subsequent to [Dr. Hennings'] review is not persuasive [because there] are no significant findings upon mental status exam." Tr. 29.

The Court finds the ALJ reasonably concluded that, in light of the record as a whole, plaintiff's depression was mild and therefore did not significantly limit his ability to do basic work activities. Tr. 22-23, 29; see also 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("[i]f we rate the degree of your limitation in the [areas of activities of daily living, social functioning, and concentration, persistence, or pace] as "none" or "mild" . . . we will generally conclude that your impairment(s) is not severe"); see also Hoopai v. Astrue, 499 F.3d 1071, 1076-87 (9th Cir. 2007) (mild mental impairments need not be accounted for in the claimant's RFC). Nevertheless, because the ALJ's sequential evaluation, including the RFC assessment, adequately considered

Page 14 - OPINION AND ORDER

the effects of all of plaintiff's alleged symptoms, any purported error at step two was harmless. Burch, 400 F.3d at 682-83. The ALJ's decision is affirmed as to this issue.

### III.    Duty to Develop the Record

Plaintiff argues the ALJ should have "order[ed] a psychological evaluation" because his attorney requested one "[m]ore than a year prior to the hearing." Pl.'s Opening Br. 14. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Here, neither the ALJ nor any medical source found the record to be ambiguous or inadequate for evaluation. Rather, as addressed in Sections I and II, plaintiff simply neglected to introduce any medical evidence regarding his mental functioning due, in large part, to his failure to seek treatment. See 20 C.F.R. §§ 404.1512(c), 416.912(c) (claimant bears the burden of producing medical evidence concerning the severity of the alleged impairments).

To the extent plaintiff points to his indigence, the record before the Court reveals that he was insured during the relevant time period. Tr. 58. In any event, there is no indication that plaintiff looked into no- or low-cost mental health counseling options. Furthermore, despite having the opportunity to do so, plaintiff's counsel did not solicit specific testimony regarding plaintiff's mental impairment or any functional limitations associated therewith, or reiterate his request for a consultative examination, at the hearing. Tr. 44-70.

Likewise, to the extent plaintiff speculates regarding the existence of undiagnosed "cognitive or intellectual limitations" based on one provider's comment that "[h]e does not

understand surgery," the record before the Court demonstrates plaintiff graduated from high school pursuant to a regular curriculum. Tr. 215. Additionally, many of plaintiff's other providers noted that he adequately understood their instructions and was socially appropriate. See, e.g., Tr. 279, 284, 353; see also Tr. 380 (plaintiff "demonstrates normal behavior [and] the ability and willingness to learn"). As such, this isolated, and somewhat vague, reference does not support the need for a consultative examination, especially in light of plaintiff's coterminous drug use. In sum, the ALJ's duty to more fully develop the record was not triggered.

**IV.    RFC and Step Five Finding**

Plaintiff contends the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in his testimony or the reports of Drs. Allison and Banerjee. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed herein, the ALJ appropriately weighed the evidence from plaintiff, Dr. Allison, and Dr. Banerjee. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ's RFC and step five finding are upheld.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is

DISMISSED.

IT IS SO ORDERED.

DATED this 24th day of March 2017.


 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge